IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MARTIN P. SHEEHAN, Trustee of
the Bankruptcy Estate of
John Charles Scotchel, Jr., and
Helen Holland Scotchel,**

   **Appellant,**

            //  CIVIL ACTION NO. 1:14CV196
                 (Judge Keeley)

**JOHN CHARLES SCOTCHEL, JR.,
and HELEN HOLLAND SCOTCHEL,**

   **Appellees.**

## MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

This matter arises from Chapter 7 bankruptcy proceedings commenced in January 2012 by the debtors, John Charles Scotchel, Jr. ("Scotchel") and Helen Holland Scotchel (collectively, the "Scotchels"). Martin P. Sheehan, the trustee of the Scotchels' bankruptcy estate (the "Trustee"), appeals an Order of the Bankruptcy Court for the Northern District of West Virginia overruling his objections to one of the Scotchels' Schedule C exemptions. Specifically, the Trustee objects to the Scotchels' amendment to a particular exemption under Fed. R. Bankr. P. 1009(a), which provides a "general right to amend" that may be exercised "as a matter of course at any time before the case is closed." For the reasons that follow, the Court **AFFIRMS** the Order of the Bankruptcy Court.

**SHEEHAN v. SCOTCHEL, ET AL.**                                    **1:14CV196**

**MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT**

## I. BACKGROUND

Scotchel, an attorney in Morgantown, West Virginia, helped litigate a personal injury action that in March of 2012 ultimately resulted in a lucrative settlement agreement (the "Falls Case"). As part of that settlement, Scotchel earned a contingency fee award of $690,000. Two months before the Falls case settled, however, the Scotchels filed a bankruptcy petition in which they included the Falls Case as a Schedule B asset. They valued it on their Schedule C exemptions at only one dollar because, at that time, they were unaware of its value.

In an Order dated October 16, 2012, the Bankruptcy Court prohibited the Scotchels from "exempt[ing] 100% of the [fair market value]" of the contingency fee award from the Falls Case. Although the Scotchels protested that the fee award did not belong to the bankruptcy estate, that contention was rejected at every turn. See Scotchel v. Sheehan, 585 F. App'x 187 (4th Cir. 2014) (per curiam); Scotchel v. Sheehan, No. 1:13CV161, 2014 WL 823379 (N.D.W. Va. Mar. 3, 2014); and In re Scotchel, 491 B.R. 739 (Bankr. N.D.W. Va. 2013).

On April 26, 2013, the same day that the Bankruptcy Court entered its Order concerning the contingency fee, the Trustee sent the Scotchels a check to for one dollar, representing the claimed

2

exemption for the contingency fee in the Falls Case. Then, on July 2, 2013, the Trustee sought authorization from the Bankruptcy Court to make an interim distribution of $341,081.63 to creditors. Because the Scotchels had appealed the Bankruptcy Court's decision regarding the contingency fee, they objected to the interim distribution on the basis that the Bankruptcy Court should stay it pending the outcome of their appeal.

The Bankruptcy Court scheduled a hearing on the objection for August 1, 2013. Two days before the hearing, the Trustee stopped payment on the one dollar check, which the Scotchels had not cashed, and submitted the amount to the Registry of the Bankruptcy Court. Following the hearing, the Bankruptcy Court authorized the Trustee's distribution, but stayed it pending this Court's ruling on the Scotchels' appeal.

This Court affirmed the Bankruptcy Court's decision concerning the Falls Case contingency fee in March 2014. It also dissolved the stay, thus allowing the Trustee to make the interim distribution.

The following month, the Scotchels filed a notice of amendment to their Schedule C exemptions pursuant to Rule 1009(a). Utilizing their unused portion of West Virginia's "wildcard" exemption, W.

Va. Code § 38-10-4(e), they claimed $18,780 under the exemption for the Falls Case contingency fee.

The Trustee objected to the proposed Rule 1009(a) amendment. Following oral argument, the Bankruptcy Court entered a Memorandum Opinion and Order overruling the Trustee's objections. In its Order, the Bankruptcy Court concluded that "res judicata does not bar Mr. Scotchel from amending his claimed exemption." (Dkt. No. 1-19 at 5). Moreover, pursuant to Law v. Siegel, __ U.S. __, 134 S. Ct. 1188 (2014), the court found that it cannot exercise its general, equitable powers to disallow Mr. Scotchel's amended claim of exemption. Id. at 7. The Trustee appeals from that decision, which the Court now takes up de novo.[1] See In re Bunker, 312 F.3d 145, 150 (4th Cir. 2002).

## II. DISCUSSION

Under Rule 1009(a), "[a] debtor may amend her list [of exemptions] as a matter of course at any time before a case is

---

[1] The Trustee's arguments on appeal are anything but refined. In a shotgun-shell approach, the Trustee raises (either expressly or by implication) the doctrines of laches, estoppel, collateral estoppel, judicial estoppel, promissory estoppel, equitable estoppel, and res judicata. Nowhere does he enumerate, let alone try to satisfy, the elements of any of these doctrines (under either state or federal law); nor does he assert the "bad faith" argument raised below. As far as this Court can glean, he asks that the Scotchels' Rule 1009(a) amendment be disallowed (1) because an interim distribution had already been authorized, and (2) because equity so demands. These are the arguments the Court addresses below.

closed." Botkin v. DuPont Cmty. Credit Union, 650 F.3d 396, 398-99 (4th Cir. 2011) (emphasis added). "[A] court ordinarily does not have discretion to deny leave to amend or to require a showing of good cause." Tignor v. Parkinson, 729 F.2d 977, 978 (4th Cir. 1984); see also In re LoCurto, 239 B.R. 314, 316 (Bankr. E.D.N.C. 1999) ("As a general rule, amendments are liberally allowed, and Rule 1009 contains no limitation of the debtor's right to amend.").

Notably, res judicata is not a cognizable exception to the general rule permitting liberal amendment under Rule 1009(a). Not only has the Trustee here failed to cite any authority suggesting otherwise, but at least one court has stated that res judicata "will not preclude a debtor from filing amended exemptions under Rule 1009(a), unless a final order denying an exemption claim for the same asset has previously been entered." In re Romano, 378 B.R. 454, 464 (Bankr. E.D. Pa. 2007). Here, the Bankruptcy Court never denied the Scotchels' exemption for the Falls Case contingency fee; in point of fact, it specifically "permit[ted] the Debtors to amend their claimed exemptions." (Dkt. No. 1-25 at 3 n.3) (citing Fed. R. Bankr. P. 1009(a)). Thus, res judicata is irrelevant to the Court's analysis.

The thrust of the Trustee's appeal lies in his assertion that principles of equity should preclude the Scotchels from amending

5

their exemption. Historically, courts have recognized bad faith and prejudice as exceptions to the general rule permitting liberal amendment of exemptions under Rule 1009(a). See, e.g., In re Man, 428 B.R. 644, 649 (Bankr. M.D.N.C. 2010) ("[T]here are two recognized exceptions to the general rule: prejudice and bad faith.") (citations omitted). Last year, however, pursuant to the decision in Law v. Siegel, "the legal landscape [] changed" with respect to judicially-created equitable exceptions to the liberal amendment of exemptions. In re Gress, 517 B.R. 543, 547 (Bankr. M.D. Pa. 2014).

The debtor in Siegel claimed a $75,000 exemption for his home, to which he assigned a value of $363,348. 134 S. Ct. at 1193. He also represented that the home was subject to two mortgage liens, one for $147,156.52 and another for $156,929.04. Id. Because the total amount of these liens exceeded the home's value after deducting the $75,000 exemption, the trustee did not pursue a foreclosure sale. Id. As later disclosed, however, no second mortgage lien existed; the debtor had fraudulently represented its existence in an effort to prevent a foreclosure sale. Id. Accordingly, the trustee initiated an adversary proceeding in the bankruptcy court, which cost $500,000 to litigate. Id.

Because the debtor had perpetrated a fraud, the bankruptcy court permitted the trustee to "surcharge" the $75,000 exemption to defray his litigation expenses. Id. Both the Bankruptcy Appellate Panel and a three-judge panel of the Ninth Circuit affirmed that decision. Id. at 1193-94. Specifically, the Ninth Circuit determined that the surcharge was proper as it was "calculated to compensate the estate for the actual monetary costs imposed by the debtor's misconduct, and was warranted to protect the integrity of the bankruptcy process." In re Law, 435 F. App'x 697, 698 (9th Cir. 2011) (per curiam) (unpublished table decision). The Supreme Court granted the debtor's petition for a writ of certiorari in order to address whether a bankruptcy court "may order that a debtor's exempt assets be used to pay administrative expenses incurred as a result of the debtor's misconduct." Siegel, 134 S. Ct. at 1192.

A unanimous Supreme Court held that "[t]he Bankruptcy Court . . . violated § 522's express terms when it ordered that the $75,000 protected by [the debtor's] homestead exemption be made available to pay [the trustee's] attorney's fees, and administrative expense. In doing so, the court exceeded the limits of its authority under § 105(a) and its inherent powers." Id. at 1195. Writing for the Court, Justice Scalia explained that the Bankruptcy Code

specifically allows a homestead exemption and also provides that the amount of that exemption cannot be used to pay administrative expenses of the trustee. Id. at 1195. Of relevance here, he also emphasized that "'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." Id. at 1194 (quoting Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988)).

Notably, the trustee in Siegel had urged the existence of a "general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct." Id. at 1196. In rejecting that contention, the Court held that "the Bankruptcy Code admits no such power," and "federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code." Id. at 1196-97 (italics omitted). It further explained:

> We acknowledge that our ruling forces [the trustee] to shoulder a heavy financial burden resulting from [the debtor's] egregious misconduct, and that it may produce inequitable results for trustees and creditors in other cases. We have recognized, however, that in crafting the provisions of § 522, "Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors." Schwab v. Reilly, 560 U.S. 770, 791 (2010). The same can be said of the limits imposed on recovery of administrative expenses by trustees. For the reasons we have explained, it is not for courts to alter the balance struck by the statute.

Siegel, 134 S. Ct. at 1197-98.

**SHEEHAN v. SCOTCHEL, ET AL.**                                                **1:14CV196**

**MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT**

---

     The question presented here is whether the lack of any equitable basis under the Bankruptcy Code to deny an exemption likewise eliminates judicially-created equitable grounds to deny an amendment to an exemption under Rule 1009(a). The post-Siegel consensus calls for application of the Supreme Court's decision in this context, see, e.g., In re Lua, 529 B.R. 766, 773-74 (Bankr. C.D. Cal. 2015) (collecting cases), and this Court agrees that Siegel's rationale is applicable. Nothing in the text of Rule 1009(a) provides an exception -- equitable or otherwise -- to a debtor's unambiguous ability to amend exemptions "as a matter of course at any time before the case is closed." Thus, Siegel constrains the Court from applying the equitable exception urged by the Trustee.

     Moreover, a recent Fourth Circuit decision comports with the view that the strict interpretation of the Bankruptcy Code demanded by Siegel applies with equal force to the Bankruptcy Rules. In In re Jenkins, 784 F.3d 230 (4th Cir. 2015), the court determined the date on which a creditors' meeting had concluded based on the actions of the trustee. It quoted Rule 2003(e), which provides: "The meeting may be adjourned from time to time by announcement at the meeting of the adjourned date and time. The presiding official

shall promptly file a statement specifying the date and time to which the meeting is adjourned." Id. at 235.

Based on the text of the rule, our circuit court found that "[t]he presiding official in this case neither announced an adjourned date and time, nor filed a statement specifying as much. And the [t]rustee never sought to rectify this omission and never attempted to reconvene the creditors' meeting after July 19. The meeting therefore concluded on that date." Id. at 235-36. The trustee nevertheless urged the court to "accept that the meeting was successfully continued on [July 19] rather than concluded." Id. at 236. The court rejected that argument, finding no support in "[either] the text of Rule 2003 [or] the relevant case law." Id.

Siegel, its progeny, and Jenkins all confirm that this Court is bound to apply the unambiguous text of Rule 1009(a) in determining whether any equitable exception may be applied. Because that text provides no such exception, the Bankruptcy Court correctly rejected the Trustee's equity-based argument.

### III. CONCLUSION

For the reasons discussed, the Court finds no cognizable basis on which to disallow the Scotchels' amended exemption under Rule 1009(a). It therefore **AFFIRMS** the ruling of the Bankruptcy Court.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to remove this case from the active docket.

DATED: September 3, 2015.

                                               /s/ Irene M. Keeley
                                             IRENE M. KEELEY
                                             UNITED STATES DISTRICT JUDGE